**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

YASIR CREACH,

                             Plaintiff,

      v.                                              1:20-CV-199
                                                           (DNH/CFH)

DOE, Assistant District Attorney; DANIEL MCCOY,
C.E.O. Public Defender's Office; CRAIG APPLE,
Sheriff A.C.C.F; RICHARD CRUDO, Shift Commander
A.C.C.F; ANTHONY MANCINO, Chief Clerk Albany
City Court,

                             Defendants.

**APPEARANCES:**

Yasir S. Creach
20-A-0222
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION & ORDER

     Plaintiff pro se Yasir S. Creach commenced this action on February 24, 2020

against various defendants.[1] See Dkt. No. 1. In a Report-Recommendation and Order

dated June 16, 2020, the undersigned granted plaintiff leave to proceed in forma

---

[1] Based upon plaintiff's original complaint, five individuals are currently named as defendants on the Court's docket sheet: (1) Doe, Assistant District Attorney, (2) Daniel McCoy, C.E.O. Public Defender's Office; (3) Craig Apple, Sheriff A.C.C.F.; (4) Richard Crudo, Shift Commander A.C.C.F.; and (5) Anthony Mancino, Chief Clerk Albany City Court. See Dkt. No. 1. When liberally construed, plaintiff's amended complaint names three additional defendants: (6) Megan Spieling, Assistant Public Defender; (7) John Doe, Booking Officer at the Albany County Correctional Facility; and (8) Albany County. See Dkt. No. 18.

1

pauperis and recommended that (1) all official capacity claims be dismissed with prejudice; (2) any claim seeking to challenge the validity or length of plaintiff's confinement through a habeas petition be dismissed as moot due to his release from confinement; and (3) that the remainder of the complaint be dismissed without prejudice due to his failure to state a claim. See Dkt. No. 17.

While the matter was pending before District Judge David N. Hurd—who ultimately adopted the undersigned's Report-Recommendation and Order in its entirety—plaintiff filed an amended complaint. See Dkt. Nos. 18-19. Presently pending before the Court is a review of that amended pleading pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I. Initial Review

### A. Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). As a result, it is the responsibility of the district court to determine whether a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

To state a claim on which relief can be granted, a complaint must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8 (a)(2). "The purpose . . . is to give fair notice of the claim being

asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

>    (1)   a short and plain statement of the grounds for the
>          court's jurisdiction . . .;
>    (2)   a short and plain statement of the claim showing that
>          the pleader is entitled to relief; and
>    (3)   a demand for the relief sought . . . .

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

In addition, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered
> paragraphs, each limited as far as practicable to a single set
> of circumstances. A later pleading may refer by number to a
> paragraph in an earlier pleading. If doing so would promote
> clarity, each claim founded on a separate transaction or
> occurrence – and each defense other than a denial – must
> be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

In deciding whether a complaint states a colorable claim, a court must extend a measure of deference to pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), also referred to as "special solicitude." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). However, the court also has an obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's

3

complaint to proceed. See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff an opportunity amend the complaint as long as there is a possibility that an amendment would be able to cure the identified defects. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### B. Summary of the Amended Complaint[2]

---

[2] In the undersigned's first Report-Recommendation & Order, plaintiff was reminded that his amended complaint would completely replace the prior complaint, rendering the original pleading "'of no legal

On or about June 19, 2018,[3] plaintiff was arrested and charged with fourth-degree grand larceny in violation of N.Y. Penal Law § 155.30 and thereafter confined to the Albany County Jail. See Dkt. No. 18 at 1. The week following his arrest, plaintiff was transported to the Albany City Court by the Albany County Sheriff's Department where he was ordered to be released "under the supervision of probation" by Albany City Court Judge Gary F Stiglmeier. See id. According to plaintiff, County Executive Daniel McCoy and Assistant Public Defender Megan Spieling were present in the courtroom for those proceedings.[4] See id.

After his court appearance, plaintiff was returned to the Albany County Jail where he "in fact was not released" from custody. See Dkt. No. 18 at 1. Plaintiff notified defendant Booking Officer Doe, who responded that he would look into his concerns, but he released. See id. at 1, 4. Plaintiff attempted to contact defendant Spieling and County Executive McCoy about the "overstay in the [j]ail," but he was not released from confinement until almost one week later. Id. at 1. Plaintiff alleges that although Booking Officer Doe, defendant Spieling, and County Executive McCoy were notified that he had

---

effect.'" Dkt. No. 17 (quoting Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. Int'l Controls Corp., 434 U.S. 1014 (1978) (citing Shields v. Citytrust Bancorp, Inc., 25F.3d 1124, 1128 (2d Cir. 1994)). As a result, the following factual recitation is drawn entirely from plaintiff's amended complaint. See Dkt. No. 18.

[3] In his original complaint, plaintiff alleges that the genesis of his claims was a July 2017 arrest for a "robbery felony that was later dropped to a misdemeanor." Compare Dkt. No. 1 at 5 (quotation modified), with Dkt. No. 18 at 1.

[4] Plaintiff continues to refer to County Executive McCoy as defendant Spieling's supervisor. See Dkt. No. 18 at 1, ¶¶ 2, 4-6. As noted in the undersigned's first initial review of this matter, "it is unclear to the Court how Daniel McCoy, who is County Executive of Albany County, and, thus, not directly a part of the Public Defender's Office, is considered a supervisor of [defendant Spieling.]" Dkt. No. 17 at 14 n.10. It appears—although it continues to be unclear to the Court—that plaintiff may have intended to name Public Defender Stephen Herrick, rather than County Executive McCoy, as a party to this action.

5

been released, they "deliberately denied doing anything to rectify the problem." Id. at 1-2. As relief, plaintiff seeks $100,000 in compensatory damages. See id. at 2.

In the first Report-Recommendation and Order, the undersigned noted that plaintiff had failed to fully specify which, if any, of his constitutional rights have been violated. See Dkt. No. 17 at 7. In his amended complaint, plaintiff first outlines the facts that give rise to his constitutional complaints and then attaches what he captions as a "statement of claim" and a "statement of facts." Dkt. No. 18 at 3-4. The former document provides at least some clarity with respect to the nature of the claims that plaintiff is seeking to assert in this action. See Dkt. No. 18 at 3. In particular:

> I . . . seek damages against the [Albany County] and [County Executive McCoy], and Booking Officer 'Doe' for violating my Constitutional rights secured under the 8th and 14th Amendment[s] of the United States by knowing of my overstay at the County Jail and being deliberately [i]ndifferent in rectifying the problem. I also seek damages of equitable relief against the Municipality of Albany for my physical pre[-]trial imprisonment properly under 1983 42 USC.

Dkt. No. 18 at 3 (errors in original) (internal citations omitted).

### C. Analysis[5]

#### 1. Personal Involvement

"'[P]ersonal involvement of [the] defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)); see also Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . .

---

[5] Copies of all unreported decisions cited in this document have been appended for the convenience of the pro se plaintiff.

6

[section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). In addition, it is well established that a supervisor cannot be held liable for damages under section 1983 based solely upon his or her supervisory position because there is no respondeat superior liability pursuant to section 1983. See Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (citations omitted). Prior to the Supreme Court's decision in Iqbal, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[6] See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Here, the original complaint named—among others—Assistant District Attorney Doe; Craig Apple, Sheriff A.C.C.F.; Richard Crudo, Shift Commander A.C.C.F.; and Anthony Mancino, Chief Clerk Albany City Court as defendants to this action. See Dkt. No. 1. Plaintiff's amended complaint does not contain any allegations with respect to those defendants. In the absence of any factual allegations that would plausibly

---

[6] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

7

suggest that these defendants were personally involved in any alleged constitutional deprivations, it is recommended that each of those individuals be dismissed due to their lack of personal involvement in any of the constitutional violations alleged by plaintiff.[7]

### 2. Assistant Public Defender Megan Spieling

State action is an essential element of any section 1983 claim. Gentile v. Republic Tobacco Co., No. 95-CV-1500 (RSP/DNH), 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing Velaire v. City of Schenectady, 862 F. Supp. 774, 776 (N.D.N.Y. 1994)). To survive scrutiny under section 1915(e) where a plaintiff has asserted a section 1983 claim, the complaint must allege facts that plausibly suggest state action on the part of the named defendants. See DeMatteis v. Eastman Kodak Co., 511 F.2d 306, 311 (2d Cir. 1975), modified on other grounds by 520 F.2d 409 (2d Cir. 1975), ("A private party violates [section] 1983 only to the extent its conduct involves state action."); see also Wilson v. King, No. 08-CV-0509, 2008 WL 2096593, at *1 (N.D.N.Y. May 16, 2008) (Sharpe, J.).

While the office that employs defendant Spieling may be publicly funded, it is well-established that "public defenders or court-appointed defense attorneys do not act under color of law." Housand v. Heiman, 594 F.2d 923, 924-25 (2d Cir. 1979) (internal

---

[7] Although plaintiff does not set forth any factual allegations in the amended complaint with respect to defendants Apple and Mancino, to the extent that the attachments included with the amended complaint could be liberally construed as attempting to raise a due process claim, see Dkt. No. 18 at 6, 8, it is well settled that a denial of plaintiff's request pursuant to New York's Freedom of Information Law ("FOIL"), N.Y. Public Officers' Law § 87 is not cognizable. Plaintiff does not have a property or liberty interest in obtaining documents pursuant to FOIL. See Boyd v. Albany Cty. Dep't of Soc. Servs., No. 1:14-CV-1386 (LEK/RFT), 2015 WL 3447608, at *7 (N.D.N.Y. May 28, 2015). In addition, plaintiff had an adequate post-deprivation remedy in the form of a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules. See Davis v. Guarino, 52 F. App'x 568, 569 (2d Cir. 2002) (summary order).

8

quotation marks omitted); accord Polk Cty. v. Dodson, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). Here, defendant Spieling, a public defender, is not a state actor nor a private person acting under the color of state law. Accordingly, I recommend that plaintiff's claims against defendant Spieling be dismissed due to lack of state action.

### 3. Continued Detention

A claim that a prisoner was held beyond the expiration of his sentence falls under the Fourteenth Amendment's guarantee of due process—either as a general guarantee of a liberty interest in being set free at the end of a term of imprisonment—or as a specific guarantee of the Eighth Amendment's protection against cruel and unusual punishment as applied to the states. See Calhoun v. N.Y. State Div. of Parole Officers, 999 F.2d 647, 653-54 (2d Cir. 1993); see also Campbell v. Peters, 256 F.3d 695, 700 (2d Cir. 2001) (recognizing an Eighth Amendment claim); Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985) ("Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest; otherwise, such detention can be held to be unconstitutional only if it violates due process." (citations omitted)).

"'[I]n order to obtain relief for continued detention under [section] 1983, a prisoner must show that a prison official was aware of his overstay and was deliberately indifferent in rectifying the problem.'" Brunson v. Duffy, 14 F. Supp. 3d 287, 293 (S.D.N.Y. 2014) (quoting Beahm v. Burke, 982 F. Supp. 2d 451, 461 (E.D. Pa. 2013)).

9

To state a prolonged incarceration claim under the Fourteenth Amendment, a plaintiff must allege that he was denied "an opportunity to be heard at a meaningful time and in a meaningful manner[.]"  See Calhoun, 999 F.2d at 653.  To state a prolonged incarceration claim under the Eighth Amendment, a plaintiff must allege that the defendant "inflict[ed] 'a harm of a magnitude' that violates a person's [E]ighth [A]mendment rights" and that the defendant was "deliberately indifferent" to the continued detention.  Calhoun, 999 F.2d at 654 (quoting Sample v. Diecks, 885 F.2d 1099, 1109 (3rd Cir. 1989)).

Here, plaintiff alleges that his continued detention claim arises under both the Eighth and Fourteenth Amendments.  See Dkt. No. 18 at 3.  More specifically, plaintiff states that he "seek[s] damages against . . . [County Executive McCoy] . . . and Booking Officer 'Doe' for violating my Constitutional rights secured under the 8th and 14th Amendment[s] of the United States by knowing of my overstay at the County Jail and being deliberately [i]ndifferent in rectifying the problem[.]"  Id.  In that respect plaintiff alleges that when he returned from his court appearance in Albany City Court, he informed Booking Officer Doe that he had been released by Judge Stiglmeier and asked that Booking Officer Doe "look into it[.]"  Dkt. No. 18 at 1.  In addition, County Executive McCoy was present in the courtroom when Judge Stiglmeier ordered plaintiff's release and also took plaintiff's call and said that "he would take care of it" when informed of plaintiff's continued detention  Dkt. No. 18 at 1.  Plaintiff asserts that both defendants "were all aware of [the] overstay," but that he continued to be confined for one additional week.  Dkt. No. 18 at 1.

Here, plaintiff's allegations fail to state an Eighth Amendment claim for prolonged incarceration. In particular, plaintiff has failed to allege a sufficiently serious deprivation of his constitutional rights that would trigger Eighth Amendment protections. See Calhoun, 999 F.2d at 654. Plaintiff alleges that although he was released from confinement by Judge Stiglmeier, he was then held at Albany County Jail for an additional week. See Dkt. No. 18 at 1. The administration of a justice system that includes prison sentences as punishment "entails an unavoidable risk of error," Sample, 885 F.2d at 1108, and seven additional days of confinement unfortunately does not raise a harm of a constitutional magnitude under the Eighth Amendment. See Lozada v. Warden Downstate Corr. Facility, No. 10-CV-8425 (RWS), 2012 WL 2402069, at *2 (S.D.N.Y. June 26, 2012) ("Here, the additional seven days of incarceration is insufficient to bring an Eighth Amendment claim.") (citing Brims v. Burdi, No. 03-CV-3159 (WHP), 2004 WL 1403281, at *2 (S.D.N.Y. June 23, 2004) (an additional six days is not a harm sufficient to implicate the Eighth Amendment)); see also Hayes v. Annucci, No. 14-CV-8845 (NSR), 2016 WL 1746109, at *5 (S.D.N.Y. Apr. 29, 2016) (an additional 17 days is not a harm of a constitutional magnitude).

Plaintiff's allegations also fail to state a Fourteenth Amendment claim for prolonged incarceration. Although plaintiff alleges that he provided notice to both County Executive McCoy and Booking Officer Doe of his jail overstay, see Dkt. No. 18 at 1, he does not plausibly allege that either defendant was "personally involved in the refusal to timely release plaintiff from custody." Praileau v. New York, No. 1:17-CV-836 (GLS/CFH), 2017 WL 6033738, at *6 (N.D.N.Y. Nov. 8, 2017), report and recommendation adopted, No. 1:17-CV-836, 2017 WL 6033420 (N.D.N.Y. Dec. 5,

11

2017). Mere notice, without more, is insufficient to plausibly suggest that a defendant was deliberately indifferent to a plaintiff's prolonged detention. See id; Todd v. Hatin, No. 2:13-CV-05, 2013 WL 3990815, at *2 (D. Vt. Aug. 5, 2013). Likewise, merely being aware of an overstay is not sufficient to plausibly allege that a defendant "took any actions resulting in a denial of [the p]laintiff's due process rights in his attempts to secure release." Brunson, 14 F. Supp. 3d at 293. From plaintiff's bare allegations, even if County Executive McCoy and Booking Officer Doe were aware of plaintiff's overstay, it is not clear how either defendant was involved or responsible for plaintiff's delayed release from confinement. See Praileau, 2017 WL 6033738, at *6. Based on the foregoing, it is recommended that plaintiff' continued detention claim—whether it arises under the Eighth or Fourteenth Amendment—be dismissed.

### 4. Municipal Liability

Plaintiff's sole remaining claim is against the Albany County. See Dkt. No. 18 at 3. Municipal liability is limited under section 1983 by Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). In that respect, a municipality cannot be held vicariously liable for civil rights violations perpetrated by its employees, see id. at 691-92, and is responsible only for its "own illegal acts," Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). To successfully state a claim for municipal liability, a plaintiff must plausibly allege that a constitutional violation occurred because of an official municipal policy or custom. See Monell, 436 U.S. at 694-95.

An "official policy or custom" can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for

>establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

Dorsett-Felicelli, Inc. v. Cty. of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.) (internal citations omitted). Because "Monell does not provide a separate cause of action for the failure by the government to train its employees[,]" a court need not address municipal liability under Monell if no underlying constitutional violation is found. Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006).

Here, plaintiff's allegations are conclusory.  He does not plausibly allege, at any point, that any alleged constitutional violation was the result of an official municipal policy or custom on the part of Albany County. See Dkt. No. 18.  Plaintiff merely asserts that he seeks "equitable relief against [Albany County]," which appears to be an impermissible attempt to hold the municipality vicariously liable for civil rights violations perpetrated by its employees. See Monell, 436 U.S. at 691-92.  On this basis alone, plaintiff's claim should be dismissed. See Meehan v. Kenville, 555 F. App'x 116, 117 (2d Cir. 2014) (summary order) (claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality");

Even if plaintiff's claims could be generously construed as plausibly alleging a municipal custom or policy, however, for the reasons previously stated, plaintiff has failed to state any cognizable constitutional claim against any individual defendant. See Dkt. No. 18.  In the absence of a claim against any individual defendant, a claim under

13

Monell cannot proceed. See e.g., Van Cleef v. Seneca Cty., No. 08-CV-6403 (MAT), 2009 WL 1150407, at *2 (W.D.N.Y. Apr. 27, 2009) ("Here, since the Court finds that plaintiff has failed to plead that a constitutional violation was committed against him by the individual defendants, no Monell claim can lie against [the municipal defendants] pursuant to § 1983"). Accordingly, I recommend that plaintiff's Monell claim against Albany County be dismissed

### D.  Nature of Dismissal

In general, when a pro se action is dismissed sua sponte, the plaintiff should be allowed to amend the complaint once before the complaint is dismissed. See Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999). "Generally, . . . a second opportunity to amend is not required by the law, even given a plaintiff's special status as a *pro se* civil rights litigant." Bitetto v. D'Angelo, No. 1:16-CV-1499 (GTS/CFH), 2018 WL 2716897, at *1 (N.D.N.Y. June 6, 2018). In Cresci v. Mohawk Valley Cmty. College, 693 F. App'x 21 (2d Cir. 2017), the Second Circuit noted that "[t]he proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient," because, "[b]efore learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously." Id. at 25.

Here, plaintiff has already been given one opportunity to amend his complaint. See Dkt. Nos. 17, 19.  In plaintiff's haste to amend his pleading following the issuance of the undersigned's first Report-Recommendation and Order, plaintiff "arguably was not adequately informed of the pleading defects of his . . . claim[s]," because Judge

14

Hurd had not yet accepted the undersigned's first recommendation.  See Bitetto, 2018 WL 2716897, at *1.  Although it is not clear that better pleading will enable plaintiff to address the identified deficiencies, in light of his status as a pro se litigant, it is recommended that the complaint be dismissed, but that he be given one final opportunity to amend his complaint.  Plaintiff is respectfully reminded that the chief (although note sole) defect in his pleading concerns his failure to allege facts plausibly suggesting that any defendant was personally involved or deliberately indifferent to his alleged overstay in the Albany County Jail.  Conclusory allegations are not sufficient.

Plaintiff is reminded that if Judge Hurd permits plaintiff to file a second amended complaint, that second amended pleading is intended to completely replace the prior pleadings in the action, and thus it "renders [any prior complaint] of no legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. Int'l Controls Corp., 434 U.S. 1014 (1978); see also Shields v. City-Trust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, if plaintiff elects to file a second amended complaint, it must include all of the facts, allegations, claims, and requests for relief that plaintiff intends to pursue in this action.

## II. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED** that, in accordance with footnote 1 of this Report-Recommendation & Order, the Clerk of the Court is directed to **CORRECT** the caption of the docket sheet so as to add the following as defendants: Megan Spieling, Assistant Public Defender;

John Doe, Booking Officer at the Albany County Correctional Facility; and Albany County; and it is further

**RECOMMENDED**, that plaintiff's amended complaint be dismissed as to defendants following defendants: Doe, Assistant District Attorney; Craig Apple, Sheriff A.C.C.F.; Richard Crudo, Shift Commander A.C.C.F.; Anthony Mancino, Chief Clerk Albany City Court; and Megan Spieling, Assistant Public Defender; and it is further

**RECOMMENDED**, that plaintiff's amended complaint (Dkt. No. 18) be **DISMISSED** in its entirety without prejudice to providing plaintiff with one final opportunity to file a second amended complaint to cure the defects identified above; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order in full, should plaintiff wish to proceed with this action, he must file any second amended complaint within thirty (30) days of the District Judge's Order adopting of this Report-Recommendation & Order, and that, following the District Judge's review of this Report-Recommendation & Order, if a second amended complaint is filed, the Clerk return this case to the Magistrate Judge for review of any Second Amended Complaint; and it is,

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).[2]

Dated: September 25, 2020
       Albany, New York

_____
Christian F. Hummel
U.S. Magistrate Judge

---

[2] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).